IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DISTRICT

PETER HORNEFFER, M.D.   *

  Plaintiff,      *

  v.        *   Case No.: MJG-11-00410

ST. JOSEPH MEDICAL CENTER, INC., *
ET AL.
          *
  Defendants.
          *

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO COMPEL ARBITRATION
AND TO STAY ALL FURTHER PROCEEDINGS**

## I.  INTRODUCTION

Plaintiff Peter Horneffer, M.D. ("Horneffer" or "Plaintiff") should be compelled to arbitrate all claims contained in this lawsuit because he entered into a valid arbitration agreement with his employer, Saint Joseph Physician Enterprise, Inc. ("SJPE"). Although the arbitration provision signed by Horneffer is contained in an Employment Agreement between Plaintiff and SJPE (an entity not a party to the current lawsuit), defendants St. Joseph Medical Center, Inc. ("the Hospital") and Catholic Health Initiatives ("CHI") (collectively "Defendants"), are entitled to insist on enforcement of the arbitration provision under applicable law. Specifically, arbitration should be compelled because Plaintiff's lawsuit, which alleges (1) that he was harassed and/or discriminated against in violation of the whistleblower provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3730(h) (Count I), and (2) that he was subjected to tortious

interference with economic relationships and activity (Count II), centers on allegations arising out of his employment relationship which are included within the plain language contained in the arbitration provision of the Employment Agreement.

This Court, after determining that the facts as originally pleaded by Plaintiff were both incomplete and, in some cases, incorrect, dismissed Plaintiff's original Complaint and directed Plaintiff to file an Amended Complaint.  The Amended Complaint contains few substantive changes, however.   While the newly amended lawsuit corrects the allegations regarding Plaintiff's employer, noting that (1) SJPE employs Plaintiff, and (2) CHI is the parent company of SJPE,[1] the remaining allegations are otherwise essentially the same as in his Original Complaint and the limited modifications simply confirm the fact that Defendants, as non-signatories, are entitled to the benefit of the arbitration clause contained in the Employment Agreement.

Both the Fourth Circuit and this Court have held that there are several circumstances pursuant to which non-signatories to an arbitration provision, including parent companies like CHI and entities like the Hospital, may compel arbitration with a signatory to the arbitration provision.  As discussed in more detail below, the facts in this case fully support the reasoning of both the Fourth Circuit and this Court for allowing non-signatories to enforce arbitration provisions contained in agreements to which they are not a party.   In addition, compelling

---

[1] Among many factual mistakes still contained in the Amended Complaint, Plaintiff erroneously alleges in ¶ 47 that the September 2008 settlement was between Horneffer, CHI and the Hospital. CHI, however, was not a party to the Settlement Agreement, a fact readily ascertainable to Plaintiff as a party to that Agreement. Although Defendants are not arguing the facts in this Motion to Compel Arbitration, Defendants will be denying and disputing many of the factual characterizations in Plaintiff's Amended Complaint, regardless of the forum in which the matter proceeds.

arbitration in this case furthers the policy that arbitration is strongly favored and liberally enforced by both the Federal Arbitration Act and the Fourth Circuit.  This Court should stay this case and compel arbitration proceedings as required by Horneffer's Employment Agreement.

## II.     FACTUAL BACKGROUND

Horneffer signed a Physician Employment Agreement with SJPE on September 10, 2008. *See,* September 10, 2008 Employment Agreement ("the Agreement"), attached hereto as "Exhibit A."  Paragraph 21 of the Agreement contains a broad and unambiguous arbitration provision which states, in pertinent part:

> Any dispute regarding (1) any aspect of this Agreement, (2) any act which allegedly has or may violate any provision of this Agreement, or (3) *any dispute related to the employment relationship between the parties* or the termination of that relationship shall be submitted to binding arbitration in Towson, Baltimore County, Maryland before a mutually acceptable arbitrator, as the exclusive remedy for such a claim or dispute.  The arbitration shall be in accordance with the American Health Lawyers Association Alternative Dispute Resolution Service Rules of Procedure for Arbitration (AHLA Arbitration Procedures) to the extent such procedures are not in conflict with this Agreement.  *Disputes subject to arbitration include, but are not limited to, all employment-related claims arising under state or federal statutes, common-law torts, and contract claims.*  Employment disputes not subject to arbitration include Section 9 injunctive and equitable relief actions as well as workers' compensation claims, unemployment compensation claims, and other employment-related claims that parties are not legally permitted to voluntarily arbitrate.

*See* Exhibit A at ¶ 21 (emphasis added).

Moreover, immediately following the arbitration provision, an acknowledgement paragraph, printed in all capital letters, provides:

> THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES.

*Id.*  The Agreement also provides that it is governed by the Federal Arbitration Act, 9 U.S.C. § 1

*et seq.* ("FAA")[2] and, as noted above, specifically explains that it is intended to cover all employment-related disputes brought by Horneffer, including all employment-related claims arising under state or federal statutes, any common law torts, and all contract claims. *Id.*

Horneffer remains employed by SJPE and although the allegations contained in his lawsuit relate directly to that employment, he has chosen to sue (1) the Hospital, where he performs surgeries as part of his employment, and (2) SJPE's parent, CHI, rather than his actual employer, SJPE. The fact that Horneffer's employment relationship is at the heart of the lawsuit is mentioned throughout the allegations contained in the Amended Complaint. In fact, Horneffer specifically references the supposed existence of an employment relationship between the Hospital, CHI and him, alleging, for example, that Defendants took unlawful action against the Plaintiff "in the terms and conditions of his employment . . . ." Amended Complaint, ¶¶ 1, 39. Because each of the two counts contained in Horneffer's Amended Complaint contain allegations referencing an intertwined employment relationship between Horneffer on the one hand, and the Hospital and the parent company CHI on the other, this Court should find that Defendants may enforce the arbitration provision contained in the only Employment Agreement he actually entered, with SJPE.

### III.    ARGUMENTS & AUTHORITIES

**A.    The Decision Regarding Whether to Compel Arbitration Should be Made by this Court.**

The decision whether to compel arbitration is a legal one that this Court is required to make. As the Fourth Circuit has held, "[w]hen there is a dispute as to the scope of the arbitration

---

[2] The Agreement states: "Any arbitration award may be enforced under the Federal Arbitration Act." *See* Exhibit A at ¶ 21.

agreement, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator, '[u]nless the parties clearly and unmistakably provide otherwise.'" *Alamria v. Telcor International, Inc., et. al.*, 920 F. Supp. 658, 668 (D. Md. 1996) (quoting *Summer Rain v. Donning Co./Publishers, Inc.*, 964 F.2d 1455, 1459 (4th Cir. 1992)).  The parties here have not provided otherwise, and this Court must decide whether the arbitration clause should be enforced.

**B.      Both This Court And The Fourth Circuit Have Adopted A Strong Policy Favoring Arbitration.**

As an initial matter, arbitration should be compelled in this case because of the "liberal federal policy favoring arbitration agreements."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  In enacting the FAA, Congress intended to overcome the reluctance of some courts to enforce arbitration agreements.  *See Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 270 (1995) (stating that "the basic purpose of the Federal Arbitration Act is to enforce agreements to arbitrate").  The FAA not only placed arbitration agreements on equal footing with other contracts, but also established a federal policy in favor of arbitration.[3]  *See e.g., Green Tree Fin. Corp. Alabama v. Randolph*, 531 U.S. 79, 90 (2000); *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984).

---

[3] This "liberal federal policy favoring arbitration agreements" in effect creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within coverage of the [FAA]."  *Perry v. Thomas*, 482 U.S. 483, 489 (1987).  The United States Supreme Court has warned against judicial rulings designed to erode FAA precedence "by indirection."  *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 122 (2001).  It is the intent of Congress "to move the parties to an arbitrable dispute out of court and *into arbitration as quickly and easily as possible*."  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22 (emphasis added).

This policy favoring arbitration applies to employment cases.  As the United States Supreme Court has noted:

> We have been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context.  Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation . . . .

*Circuit City Stores, Inc.*, 532 U.S. at 123 (citation omitted).  Moreover, in *Moses H. Cone Memorial Hospital*, 460 U.S. at 25, n.32, the Supreme Court held that this body of law applies both in state and federal courts.  In enacting the FAA, "Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements" and thus, any conflicting state laws are preempted.  *Southland Corp*, 465 U.S. at 16.

The Fourth Circuit has acknowledged this strong policy in favor of arbitration and this Court has explicitly held that if there is "a 'close-call' on the issue of arbitrability, the Court must decide in favor of sending the parties to arbitration."  *Davidson v. Becker*, 256 F. Supp. 2d 377, 380 (D. Md. 2003).  Further, this "heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to questions, a court must decide the question in favor of arbitration."  *Levin v. Alms & Associates, Inc.*, 634 F.3d 260, 266 (4th Cir. 2011).  In other words, in order to deny a request to arbitrate, the court must be able to say with "positive assurance" that the dispute is *not* covered by the arbitration clause.  *Davidson*, 256 F. Supp. at 380 (quoting *Long v. Silver*, 248 F.3d 309, 316 (4th Cir. 2001)) (emphasis added).

Here the arbitration clause contained in Horneffer's Employment Agreement is expressly governed by the FAA and this action falls squarely within the Agreement's broad definition of arbitrable claims.  Considering both the plain language of the arbitration provision and the liberal policy favoring arbitration, Defendants' Motion to Compel Arbitration should be granted.

**C.     The Agreement Should Be Enforced Pursuant to the Supreme Court's Two-Part Test.**

The Supreme Court has enunciated a two-part test to be used in determining if arbitration should be compelled:  (1) "whether the parties are bound by a given arbitration clause" and (2) "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy."  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002).  *See also, Glass v. Kidder Peabody & Co., Inc.,* 114 F.3d 446, 453 (4th Cir. 1997).  Both questions can be answered in the affirmative in this case, thereby mandating arbitration of Horneffer's claims.

**1.     Non-Signatories CHI and Saint Joseph's Medical Center May Compel Arbitration.**

The Fourth Circuit has held that a non-signatory "may, in certain situations, compel a signatory to the clause to arbitrate the signatory's claims against the non-signatory despite the fact that the signatory and non-signatory lack an agreement to arbitrate." *American Bankers Ins. Group, Inc. v. Long*, 453 F.3d 623, 627 (4th Cir. 2006).  *Accord, International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir. 2000) (noting that while "a contract cannot bind parties to arbitrate disputes they have not agreed to arbitrate…'it does not follow'" that "an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision") (citing *Fisser v. International Bank*, 282 F.2d 231, 233 (2d Cir. 1960)).  The Fourth Circuit has recognized that non-signatories may compel arbitration: (1) when the facts as alleged as to a non-signatory are inherently inseparable from those facts alleged against the signatory, or (2) under principles of equitable estoppel.

### a. The Non-Signatory Defendants May Compel Arbitration of Signatory Horneffer.

### i. Parent Company CHI Is Entitled to the Benefit of the Arbitration Agreement Signed by Horneffer.

The Fourth Circuit has held that a parent company like CHI that is not a signatory to the arbitration agreement may compel arbitration (or be compelled to arbitrate) based on an arbitration agreement signed by a party to the lawsuit if the allegations against the non-signatory are "based on the same facts and are inherently inseparable." *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile*, 863 F.2d 315, 320-21 (4th Cir. 1988)).  This principle has repeatedly been applied by both the Fourth Circuit and district courts in Maryland.  *See, e.g., Silkworm Screen Printers, Inc. v. Abrams*, 978 F.2d 1256, 1992 WL 317187 at *5 (4th Cir.) ("We have held that a nonsignatory parent company may arbitrate a claim if its subsidiary is a signatory to an arbitration agreement and the charges against the parent and subsidiary involve inherently inseparable facts.").

For example, in *J.J. Ryan & Sons*, the plaintiff and certain of defendant parent company Rhone's affiliates had distribution contracts that included arbitration provisions.  863 F.2d at 318.  The plaintiff alleged that the parent defendant "acted in concert with its affiliates and caused them to terminate the contracts and take other actions detrimental to Ryan." *Id*. at 320.  The parent defendant was not a signatory to the contracts but was willing to submit claims to arbitration.  *Id*.  The plaintiff, however, contended that it would be error to refer the claims to arbitration since defendant was not a party to the arbitration provision.  *Id*.  In finding that arbitration was proper, the Fourth Circuit held that "[w]hen the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer

claims against the parent to arbitration, even though the parent is not formally a party to the arbitration agreement."  *Id*. at 320-21.  Significantly, the court also noted that "[i]f the parent corporation was forced to try the case, the arbitration proceedings would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted."  *Id*. at 321 (citing *Sam Reisfeld & Son Import Company v. S.A. Eteco,* 530 F.2d 679, 681 (5th Cir. 1976)).

The decision in *J.J. Ryan & Sons* highlights the Fourth Circuit's commitment to allowing a non-signatory parent company to compel arbitration with a signatory to an arbitration agreement with its subsidiary if the facts are inherently inseparable, as they are here.  Horneffer's claims are based entirely on – and arise out of – Horneffer's assertion, which Defendants deny, that the non-signatory parent CHI engaged in misconduct against Horneffer related to the terms and conditions of his employment.  Horneffer acknowledges in his Amended Complaint that CHI is the parent company of SJPE while simultaneously making little, if any, distinction between his employment relationship with SJPE and his relationship with CHI.  In fact, Horneffer sets forth the claims in his Amended Complaint as if his employment relationship with SJPE is interchangeable with an employment relationship with CHI.  In ¶ 53, for example, Horneffer alleges:

> As consideration[4] for entering into the Settlement agreement and signing the employment agreement with the Enterprise, Dr. Horneffer accepted the representations of the Hospital that, as part of his employment in the Hospital's new heart institute, *the Hospital and Parent would take all reasonable steps to overcome the damage to his medical practice caused by the Hospital's improper*

---

[4] The provisions of the Settlement Agreement are confidential and, therefore, will not be discussed in detail in this motion.  Much of what Plaintiff stated in his Amended Complaint regarding consideration, however, is false.

*and unlawful relationship with Midatlantic . . . .*[5]

*See* Horneffer's Amended Complaint at ¶ 53 (emphasis added).   In other words, Horneffer alleges in his Amended Complaint that both the Hospital and CHI would be involved in his new employment relationship with SJPE, a fact which supports enforcing the arbitration provision as to both entities under applicable Fourth Circuit law.

Further, like the plaintiff in *J.J. Ryan & Sons*, Horneffer alleges that both the Hospital and the parent company CHI acted "in concert" with SJPE to take acts detrimental to Horneffer's employment with SJPE.  *Id.* at 320.  In ¶ 54, Horneffer alleges:

> The aforementioned employment undertaking was, from its inception, bogus and made in bad faith.  Since the beginning of Dr. Horneffer's employment by the Enterprise in October 2008*, the Hospital and the Parent acting through their agents and employees, have harassed, intimidated, and discriminated against Dr. Horneffer for the purpose of destroying his surgical practice at the Hospital.*

*See* Horneffer's Amended Complaint at ¶ 54 (emphasis added).

The fact that the Amended Complaint repeatedly references CHI's involvement in all aspects of Horneffer's employment establishes that the factual basis of Plaintiff's claim as to the signatory SJPE and the non-signatory parent CHI are clearly interdependent, intertwined and inherently inseparable.  Although Plaintiff deliberately chose not to sue his employer, SJPE (likely because of the arbitration provision), Plaintiff's claims against parent CHI are entirely dependent on the existence of the employment relationship created by the Employment Agreement with CHI's subsidiary, SJPE.  If Plaintiff is allowed to circumvent the arbitration agreement by suing the parent

---

[5] As explained in footnote 1, *supra*, CHI was not a party to the September 2008 Settlement Agreement referenced in this paragraph.  Only the Hospital and Horneffer were parties to that Agreement.

company while still alleging claims arising out of his employment with SJPE, the federal policy in favor of arbitration would most certainly be compromised. As a result, Horneffer's allegations are easily sufficient to require this Court to find that CHI may enforce the arbitration provision.

> ii. **The Hospital May Compel Arbitration Because Plaintiff's Allegations Against the Hospital are Inherently Inseparable from His Employment Relationship with SJPE.**

Although the Hospital is not a parent of SJPE like CHI, the facts alleged by Plaintiff against the Hospital and CHI are essentially the same. The Fourth Circuit and this Court have both held that non-signatories other than parent companies may enforce an arbitration agreement for the same reasons that a parent company may enforce such an agreement. *See, e.g. International Paper,* 206 F.3d at 416-17 ("Well-established common law principles dictate that in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties."). Here, the facts alleged against the Hospital are inherently inseparable from Horneffer's employment relationship with SJPE and the Hospital should also be allowed to compel enforcement of the arbitration clause.

For example, the plaintiff dentist in *Davidson* first worked for a dental corporate practice with which she had an employment agreement containing a valid arbitration provision. 256 F. Supp. 3d at 379. The plaintiff later terminated that employment and contracted with the defendant, an independent dentist who was an agent of the corporation and a non-signatory to the employment agreement. *Id.* The plaintiff sued the defendant dentist, and the defendant argued that the plaintiff's claim should be "stayed pending arbitration because Plaintiff was under an agreement to arbitrate all claims arising under her employment relationship . . . ." *Id.* The

plaintiff countered that as a non-signatory, the dentist could not avail himself of the binding arbitration clause between the plaintiff and the dental corporate practice. *Id*. The court ultimately determined that the plaintiff could enforce the arbitration provision to the extent her allegations related to the period of time that her earlier contract was in effect and ultimately concluded that "[w]ell-settled common law principles dictate that in an appropriate case, a non-signatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties." *Id*. at 383 (quoting *Int'l Paper Co.*, 206 F.3d at 416-17). The Court cited the "inherently inseparable" test relied upon by the Fourth Circuit in *J.J. Ryan & Sons,* stating that the non-signatory defendant could compel arbitration if the claims against the dental corporate practice were "inherently inseparable" from the claims against the individual dentist defendant. *Id*.

Here, as noted, *supra*, with regard to CHI, the claims Plaintiff alleges in his Amended Complaint against the Hospital are inherently inseparable from his claims against SJPE. As previously cited, in ¶ 54 Horneffer alleges:

> The aforementioned employment undertaking was, from its inception, bogus and made in bad faith. Since the beginning of Dr. Horneffer's employment by the Enterprise in October 2008, *the Hospital and the Parent acting through their agents and employees, have harassed, intimidated, and discriminated against Dr. Horneffer for the purpose of destroying his surgical practice at the Hospital.*

See Horneffer's Amended Complaint at ¶ 54 (emphasis added). [6]

The Amended Complaint also states that Horneffer "accepted the representations of the Hospital" that, in consideration for signing the 2008 Settlement agreement, the Hospital agreed

---

[6] Similarly, in paragraph 54(c) Horneffer alleges that "the Hospital continued to harass and intimidate Dr. Horneffer by raising false and misleading complaints regarding his competence. . ." *See also*, paragraphs 54(e)(f)(h)(k) and (n), each of which contains references to the Hospital's involvement in Plaintiff's employment.

to employ Horneffer through SJPE.  *Id*. at ¶ 53.  Further, Horneffer alleges that "the Hospital threatened to terminate Dr. Horneffer's employment agreement with the Enterprise" and the Hospital, in conjunction with CHI, did not help Horneffer in rebuilding his practice, "threatened to substantially reduce and even eliminate his salary for lack of productivity," and "threatened to enforce a non-compete clause" in the Employment Agreement containing the arbitration clause. *Id*. at ¶ 56.  These allegations highlight the fact that in his Amended Complaint Horneffer alleges that the Hospital is intimately involved with Horneffer's employment relationship with SJPE. Accordingly, although Horneffer did not sue SJPE, the facts alleged against the Hospital are inherently inseparable from Horneffer's employment relationship with SJPE and "arise out of" that relationship.[7]   Consequently, the arbitration provision contained in the Employment Agreement creating the employment relationship, and providing that all claims relating to the employment must be arbitrated, should be enforced.

### b.  Arbitration Should be Compelled Under Principles of Equitable Estoppel.

Although Defendants were not signatories to the Employment Agreement between Horneffer and SJPE, Plaintiff's claims against both CHI and the Hospital depend entirely on the existence of the employment relationship created by that same Agreement.  The Fourth Circuit and federal courts in Maryland have held that "a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties" based on the theory of equitable estoppel.  *Int'l Paper Co.*, 206 F.3d at 416-17.  This doctrine  "recognizes that a party may be

---

[7] Even after admitting at oral argument that SJPE employed Horneffer and issued his paychecks, counsel for Horneffer essentially admitted that the relationship between Hospital and SJPE was intertwined, stating that "Dr. Horneffer's *employment at the Hospital* is a result of his contract with the Enterprises [sic]."  *See*, May 5, 2011 Transcript of Proceedings at p. 9, ll. 6-11, attached hereto as "Exhibit B" (emphasis added).  Thus, Plaintiff's counsel continues to allege that Plaintiff is somehow employed by the Hospital.

estopped from asserting that the lack of [another's] signature on a written contract precludes enforcement of the contract's arbitration clause when [the party] has consistently maintained that other provisions of the same contract should be enforced to benefit him." *American Bankers*, 453 F.3d at 627 (quoting *Int'l Paper Co.*, 206 F.3d at 418).

In *Int'l Paper Co.*, plaintiff buyer brought suit against defendant manufacturer of an industrial saw on the basis of a contract between the distributor and the manufacturer. 206 F.3d at 413. The contract between the distributor and the manufacturer contained an arbitration clause to which the buyer was not a signatory. *Id.* After the district court granted the manufacturer's motion to compel the non-signatory buyer to arbitrate, the manufacturer won in arbitration and the district court enforced the award against the buyer. *Id.* at 415. On appeal, the Fourth Circuit noted that the contract between the distributor and the manufacturer "provide[d] part of the factual foundation for every claim asserted" by the buyer against the manufacturer where the buyer alleged that the manufacturer "failed to honor the warranties" in the contract between the manufacturer and the distributor, and the buyer sought "damages, revocation, and rejection 'in accordance with' that contract." *Id.* at 418. Relying on principles of equitable estoppel, the Fourth Circuit upheld the district court's finding that the arbitration clause was binding as to the non-signatory buyer, holding that the buyer "cannot seek to enforce those contractual rights and avoid the contract's requirement that 'any dispute arising out of' the contract be arbitrated." *Id.*

Similarly, in *American Bankers*, Richard and Lillie Long ("the Longs") purchased a promissory note from Thaxton Life Partners ("TLP"), underwritten by American Bankers Insurance Group ("ABIG"). *Id.* at 625. The note was incorporated by reference into a Subscription Agreement containing an arbitration provision. *Id.* The Longs and TLP were

signatories to the Agreement, but ABIG was not a signatory.  *Id*.  The Longs sued ABIG on claims relating to the promissory note issued to the Longs and ABIG sought to enforce the arbitration provision contained in the Subscription Agreement.  *Id*.

The court agreed with ABIG's argument that "the Longs should be estopped from arguing that it [ABIG] is not a signatory to the arbitration clause because the Longs' individual claims rely on the terms of the Note, and because the Note is incorporated by reference into the Subscription Agreement."  *Id*. at 628.  Consequently, the court found that "the Longs are inequitably seeking both to enforce the duties created by the Subscription Agreement and deny the Subscription Agreement's arbitration clause."  *Id*.  The Court further stated that the "legal principle [underlying the theory of equitable estoppel] rests on a simple proposition: it is unfair for a party to rely on a contract when it works to its advantage, and repudiate it when it works to its disadvantage."  *Id.* at 627 (quoting *Wachovia Bank, Nat. Ass'n v.* Schmidt, 445 F.3d 762, 769 (4th Cir. 2006)).

Specifically, the Fourth Circuit noted that "[w]hen each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate."  *American Bankers,* 453 F.3d at 627 (quoting *Brantley v. Republic Mortgage Ins. Co.,* 424 F.3d 392, 395-96 (4th Cir. 2005)).  Thus, "the signatory need not necessarily assert a cause of action against the nonsignatory for breach of the contract containing the arbitration clause.  Instead, estoppel is appropriate if 'in substance [the signatory's underlying] complaint [is] based on the [nonsignatory's] alleged breach of the obligations and duties assigned to it in the agreement.'"  *Id*. at 627-28 (quoting *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc*., 10

F.3d 753, 757 (11th Cir. 1993)).

In this case, Horneffer's claim of whistleblower retaliation under the FCA and his common-law claim of tortious interference with economic relationships directly arise out of the employment relationship created by the Employment Agreement. Plaintiff alleges throughout the Amended Complaint that Defendants acted wrongfully in regard to the terms and conditions of his employment and were involved in several aspects of that employment. Thus, while Plaintiff chose to sue Defendants rather than SJPE (the entity that employed him and with whom he entered the Employment Agreement), his claims presume the existence of an employment relationship with Defendants. For example, Horneffer alleges that "Defendants St. Joseph's and CHI have illegally threatened, harassed, and discriminated against Dr. Horneffer in the terms and conditions of his employment . . . . ." *See* Amended Complaint at ¶ 39. Horneffer also alleges in his Amended Complaint that "[th]e aforementioned employment undertaking was . . . made in bad faith. Since the beginning of Dr. Horneffer's employment by the Enterprise in October 2008, the Hospital and the Parent . . . have harassed, intimidated and discriminated against Dr. Horneffer for the purpose of destroying his surgical practice at the Hospital." *Id*. at ¶ 54. Horneffer further alleges that the Hospital "threatened to terminate" Horneffer's employment with SJPE. *Id*. at 54(f). And, referencing Defendants' claimed ability to change or enforce aspects of an Employment Agreement to which they were not a signatory, Horneffer alleges that "[t]hroughout this period Saint Joseph's and CHI took no steps to: (1) fulfill their obligation to Dr. Horneffer to rebuild his practice. . ." and that the Hospital "threatened to substantially reduce and even eliminate his salary for lack of productivity" and "threatened to enforce a non-compete clause in his employment contract." *Id*. at ¶ 56.

Although Plaintiff has now correctly identified SJPE, and not Defendants, as his employer in the Amended Complaint, his claims still center on the fact that CHI and the Hospital are intimately involved in his employment relationship with SJPE.  As the court in *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n, Inc.,* 384 F.3d 157 (4th Cir. 2004), warned, a party may not use "artful pleading to avoid arbitration when 'in substance ... [it] is attempting to hold [a party] to the terms of [an] agreement.'"  *Id.* at 164 (quoting *Hughes Masonry Co., Inc. v. Greater Clark County Sch. Bldg. Corp.*, 659 F.2d 836, 838 (7th Cir. 1981)).  Because all of the allegations contained in Horneffer's amended lawsuit arise out of an alleged employment relationship between Horneffer and Defendants (in other words, the lawsuit alleges that Defendants acted wrongfully with regard to the terms and conditions of his employment), both the Hospital and CHI should be allowed to enforce the arbitration provision contained in the Agreement between Horneffer and SJPE under a theory of equitable estoppel.  Horneffer cannot simultaneously assert both that Defendants harmed him in the terms  and conditions of his employment and that the arbitration provision in the Employment Agreement creating those very terms and conditions should not be enforced.  As the Court noted in *American Bankers*, it would be unfair for Horneffer to rely on the Agreement when it is to his advantage and repudiate it when it is not. Consequently, this Court should compel Horneffer to arbitrate his employment claims under principles of equitable estoppel.

###   2.   The Arbitration Clause Should be Enforced because Horneffer's Claims Are Expressly Covered By The Agreement.

The arbitration provision at issue here also meets the second prong of the Supreme Court's test since it applies to the precise claims made by Horneffer in this lawsuit.  In determining whether Horneffer's claims are covered by the Agreement (and thus arbitrable), the

threshold inquiry is an analysis of the contractual language.  The court must be guided by the principle that arbitration agreements are favored and are to be broadly construed with any doubts being resolved in favor of coverage.  *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.  As the Supreme Court stated in *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002), "absent some ambiguity in the agreement . . . it is the language of the contract that defines the scope of disputes subject to arbitration."

Here, the Agreement is unambiguous and expressly applies to each of the two legal theories plead in this lawsuit. The Agreement requires binding arbitration of "any dispute related to the employment relationship between the parties or the termination of that relationship" and states that "[d]isputes subject to arbitration include, but are not limited to, all employment-related claims arising under state or federal statutes, common-law torts, and contract claims." *See,* Exhibit A at ¶ 21.  Accordingly, Horneffer's claim of retaliation under the whistleblower provision of the False Claims Act, 31 U.S.C. § 3730(h) (a federal statute), and his claim alleging interference with economic relationships (a tort claim), each depend on his status as an employee and both fall within the plain language of the Agreement.  He should be compelled to arbitrate both claims.[8]

**D.     Attorney's Fees**

During the May 5, 2011 hearing before the Court, Plaintiff's counsel admitted that some of the key facts relating to Plaintiff's employment originally pleaded in Plaintiff's Complaint,

---

[8] The Fourth Circuit has held that FCA whistleblower claims are arbitrable.  *See, e.g., United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 381 (4th Cir. 2008) (denying relators' contention that the FCA's anti-retaliation provision "prohibits relators from waiving their right to pursue such a claim in federal court rather than arbitration," and holding that "the employment counts clearly fall within the ambit of the arbitration clause").

such as the identity of his employer, were erroneous.  *See* Exhibit B, at p. 9, l. 15 to p. 10, l. 10. As a result, the Court dismissed Plaintiff's lawsuit and directed Plaintiff to file an Amended Complaint setting forth all of the facts necessary for the court to issue a ruling on the motion to compel arbitration.  Some of these inaccurate facts, including the identity of Horneffer's employer, had been known to the Plaintiff from the inception of this lawsuit.  For example, Plaintiff presumably has known the identity of his employer since he signed the Employment Agreement in 2008.  Similarly, he presumably had knowledge of the identity of the entity which issued his paycheck, yet Plaintiff participated in briefing the original motion without correctly stating these facts until directed to do so at the hearing before the court.

28 U.S.C. § 1927 states:

> Any attorney. . .  who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Because of Plaintiff's failure to identify his true employer, Defendants have been required to engage additional time and attorney's fees in order to redraft this Motion to Compel Arbitration to respond to Plaintiff's recital in his Amended Complaint of facts that were known to him from before the time the lawsuit was filed and that could have been addressed initially.[9] Thus, Defendant asks the court to award it the excess costs, expenses and attorney's fees incurred because of this conduct.[10]

---

[9] Although the possibility of engaging in formal or informal discovery was discussed at the court hearing, counsel for Plaintiff never approached counsel for Defendants requesting any additional information prior to filing the Amended Complaint.

[10] If the court does require Plaintiff to pay Defendants' attorneys' fees, Defendants will later provide an affidavit with the calculations of such fees.

19

## IV.     <u>THIS ACTION MUST BE STAYED</u>

The Court must stay this action pending its ruling on this Motion and completion of any arbitration proceedings ordered.   9 U.S.C. § 3.   Defendants request that the Court compel arbitration of Horneffer's lawsuit in its entirety and stay all judicial proceedings through the conclusion of the arbitration.

## V.     <u>CONCLUSION</u>

Plaintiff alleges wrongdoing by St. Joseph Medical Center and CHI relating to the terms and conditions of his employment.   It is uncontroverted that the Amended Complaint, which alleges a violation of the whistleblower provision of the FCA and tortious interference with economic relationships, concerns allegations of wrongdoing arising out of an employment relationship.   It is also uncontroverted that Horneffer has signed an agreement to arbitrate all such employment-related claims.   Because the agreement to arbitrate is valid, and because federal policy favors enforcement of such agreements, Defendants respectfully request that the Court enter an order (1) compelling Horneffer to submit his dispute to arbitration pursuant to the Agreement, (2) staying this action pending resolution of this Motion and completion of the arbitration proceedings, and (3) awarding Defendants their costs and fees incurred herein, as well as awarding all such further relief that this Court deems just and proper.

Respectfully submitted:


_____/s/_____
W. Terrence Kilroy
tkilroy@polsinelli.com
Karen R. Glickstein
kglickstein@polsinelli.com
POLSINELLI SHUGHART PC
120 W. 12th Street, Suite 1600
Kansas City, MO 64105
Telephone: 816-421-3355
Facsimile: 816-4210509


FERGUSON, SCHETELICH & BALLEW, P.A.

By:        _____/s/_____

Craig F. Ballew (Fed. Bar No.: 04932)
100 S. Charles Street, Suite 1401
Baltimore, Maryland 21201-2725
(410) 837-2200
(410) 837-1188 Fax
cballew@fsb-law.com

ATTORNEYS FOR DEFENDANT