```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MARYLAND

PETER HORNEFFER, M.D.           *

        Plaintiff               *

        vs.                     *   CIVIL ACTION NO. MJG-11-410

ST. JOSEPH MEDICAL CENTER, INC. *
et al.
        Defendants              *

*       *       *       *       *       *       *       *       *
```

MEMORANDUM AND ORDER RE: ARBITRATION

The Court has before it the Renewed[1] Motion of Defendants Saint Joseph Medical Center, Inc. and Catholic Health Initiatives to Compel Arbitration [Document 15] and the materials submitted relating thereto.  The Court has reviewed the exhibits and considered the materials submitted by the parties. The Court has held a hearing and has had the benefit of the arguments of counsel.

I.   BACKGROUND[2]

At all times relevant hereto:

---

[1] This is a "renewed" motion because the Court allowed Plaintiff to file the Amended Complaint [Document 14] (referred to herein as "Compl."), mooting the original dismissal motion.
[2] The "facts" herein are as alleged by Plaintiff and are not necessarily agreed upon by Defendants.

1. Plaintiff, Peter Horneffer, M.D. ("Dr. Horneffer"), has been a cardiac surgeon licensed to practice medicine in Maryland.

2. Defendant, St. Joseph Medical Center, Inc. ("St. Joseph"), has been a community acute care hospital in Baltimore County, Maryland.

3. Defendant, Catholic Health Initiatives ("CHI"), has been a corporation that has, as one subsidiary, St. Joseph.

4. Midatlantic Cardiovascular Associates, P.A. ("Midatlantic") has been a professional medical association in Maryland.

Dr. Horneffer had leadership and organizational responsibility for St. Joseph's cardiac surgery program from its inception in or about 1982 through 2000. From 1991 through to October 2008, Dr. Horneffer was employed by Cardiac Surgery Associates, P.A. ("CSA"), a professional medical corporation in which Dr. Horneffer is a shareholder member. CSA members, including Dr. Horneffer, practiced exclusively at St. Joseph.

During the 1990's, Midatlantic engaged in a series of mergers and acquisitions that led to its becoming the largest cardiology practice in the Baltimore metropolitan area. According to Dr. Horneffer, Midatlantic engaged in an "illegal two-pronged business plan" to control the market for cardiovascular services and procedures in the Baltimore region. Compl. 5, ¶ 13. For present purposes, it suffices to state that as part of this alleged plan, Midatlantic engaged in merger

negotiations with CSA that concluded unsuccessfully in December 1999.

After the termination of merger discussions, Midatlantic began to take actions to follow through on threats it had made to put CSA out of business. For example Midatlantic stopped referrals to CSA surgeons including Dr. Horneffer and used its referral leverage to induce St. Joseph administrators to provide kickbacks and engage in other illegal activity.[3]

In early 2001, Dr. Horneffer and his CSA partners informed senior management at St. Joseph and CHI about Midatlantic's misconduct. By October 2001, CSA instituted a state court lawsuit alleging wrongful competition against Midatlantic and made St. Joseph and CHI aware of the issues.

In January 2006, Dr. Horneffer and CSA informed St. Joseph and CHI of their intent to add them as additional defendants in the suit against Midatlantic. Settlement negotiations with St. Joseph and CHI ensued. Eventually, after St. Joseph allegedly engaged in an illegal sham peer review process, a settlement was reached in September 2008 between Dr. Horneffer on one side and

---

[3] These allegations are detailed in the (to date) unsealed portions of the pleadings in <u>Lincoln, et al. v. St. Joseph Medical Center, Inc., et al.</u>, Civ. A. No. 10-cv-1632 MJG.

3

St. Joseph and CHI[4] on the other.  The settlement included an agreement to have Dr. Horneffer employed by a St. Joseph affiliate, St. Joseph Physician Enterprise, Inc. ("Enterprise")[5] as a cardiac surgeon to work in St. Joseph's new heart care institute.  There were also representations by St. Joseph and CHI to take steps to overcome the damage to Dr. Horneffer's medical practice that had been caused by their relationship with Midatlantic.  These agreements are referred to in Dr. Horneffer's complaint as "the employment undertaking." Compl. 15, ¶ 53.

A Physician Employment Agreement ("the Agreement") was entered into on September 10, 2008, between Enterprise and Dr. Horneffer.  Although neither St. Joseph nor CHI signed the Agreement, it was entered into as an element of their settlement with Dr. Horneffer.  Moreover, the Agreement expressly provided for benefits to St Joseph and CHI.[6]  Dr. Horneffer's employment

---

[4] Defendants state that CHI was not a party to the settlement agreement. For present purposes, the Court assumes that Dr. Horneffer's allegation is correct.

[5] According to Dr. Horneffer, Enterprise was created by CHI and St. Joseph as a Maryland nonprofit corporation to provide billing and other services to St. Joseph. Compl. 14 ¶ 50.  Also, Enterprise bylaws indicate that CHI is the sole corporate member (i.e., parent) and that St. Joseph is the acting corporate member; general operating duties and powers of Enterprise are held by St. Joseph as the acting corporate member.  Hr'g. Tr. 15:6-18, May 10, 2011 [Document 13].

[6] For example, the Agreement states that Enterprise employs and contracts with physicians who provide professional clinical

under the Agreement was effective October 2, 2008 with an initial five-year term that has not yet expired.[7] The Agreement includes an arbitration provision that is the subject of the instant motion.

In the instant lawsuit, Dr. Horneffer presents claims based on allegations that St. Joseph and CHI made threats, harassed, and discriminated against him "in the terms and conditions of his employment" in retaliation for his actions in regard to the False Claims Act case he filed against them and others. Compl. 11, ¶ 39. Among other things, Dr. Horneffer alleges that St. Joseph threatened him with the termination of his employment with Enterprise, threatened to substantially reduce and even eliminate Dr. Horneffer's salary from Enterprise, and threatened to enforce a non-compete clause in the Agreement.

---

services to St. Joseph's patients and administrative services on behalf of St. Joseph. The Agreement 1, Recitals A. The physician is required to agree to render services in accordance with St. Joseph's bylaws, policies, rules, regulations, procedures and protocols. Id. at Recitals B, ¶ 2.5, ¶ 3.3. Physician also agrees to comply with CHI's standards of conduct and ethical and religious directives. Id. at ¶ 3.8. The Non-competition and Non-solicitation clause protects St. Joseph, and the physician agrees not to disparage CHI. Id. at ¶ 6,7. The assignment clause allows Enterprise to assign its rights and delegate its duties under the Agreement to any affiliate, entity under common control with, or successor in interest of Enterprise – this would appear to include both St. Joseph and CHI. Id. at ¶ 14.
[7] Dr. Horneffer is still employed under the Agreement.

5

Dr. Horneffer presents his claims in two counts:

Count I –  Violation of 31 U.S.C. § 3730(h) (Discrimination and Harassment Against Plaintiff); and

Count II – Interference with Economic Relationships and Activity.

By the instant motion, Defendants seek to compel arbitration and request an award of costs, including legal fees pursuant to 28 U.S.C. § 1927.

II.  LEGAL SETTING

The Federal Arbitration Act ("FAA") reflects a strong federal policy favoring arbitration, and courts are thus required to "rigorously enforce agreements to arbitrate." Shearson/American Exp., Inc. v. McMahon, 482 U.S. 220, 226 (1987).  However, this liberal policy does not operate to compel arbitration of issues that do not fall within the scope of the parties' arbitration agreement.

Before compelling an unwilling party to arbitration, a court must "engage in a limited review to ensure that the dispute is arbitrable - i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." Murray v. United Food and Commercial Workers Intern. Union, 289 F.3d 297, 302 (4th Cir. 2002).  "The 'heavy presumption of

arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration.'" Levin v. Alms & Assocs., Inc., 634 F.3d 260, 266 (4th Cir. 2011)(quoting Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 867 F.2d 809, 812 (4th Cir. 1989)).

The party seeking to arbitrate must establish only two facts: "(1) [t]he making of the agreement and (2) the breach of the agreement to arbitrate." Mercury Constr. Corp. v. Moses H. Cone Mem'l Hosp., 656 F.2d 933, 939 (4th Cir. 1981). The Court must "avoid reaching the merits of arbitrable issues." Id. (citing Drivers, Chauffeurs, etc. v. Akers Motor Lines, 582 F.2d 1336, 1342 (4th Cir. 1978)).

III. DISCUSSION

Dr. Horneffer contends that he is not required to arbitrate his claims because:

1. His claims are not within the scope of the arbitration clause of the agreement.

2. St. Joseph and CHI, not being signatories to the Agreement, cannot enforce the arbitration clause.

3. The arbitration clause is inequitable.

These contentions shall be addressed in turn.

A.  <u>Scope Of The Arbitration Provision</u>

The Agreement includes an arbitration clause that provides, in relevant part:

> Any dispute regarding (1) any aspect of this Agreement, (2) any act which allegedly has or may violate any provision of this Agreement, or (3) any dispute related to the employment relationship between the parties or the termination of that relationship shall be submitted to binding arbitration in Towson, Baltimore County, Maryland before a mutually acceptable arbitrator,[8] as the exclusive remedy for such claim or dispute. . . . Disputes subject to arbitration include, but are not limited to, all employment-related claims arising under state or federal statutes, common-law torts, and contract claims.  Employment disputes not subject to arbitration include Section 9 injunctive and equitable relief actions as well as workers' compensation claims, unemployment compensation claims, and other employment-related claims that parties are not legally permitted to voluntarily arbitrate.

Agreement 14, ¶ 21.

"To decide whether an arbitration agreement encompasses a dispute a court must determine whether the factual allegations underlying the claim are within the scope of the arbitration clause, regardless of the legal label assigned to the claim."

---

[8] Additionally, the Agreement calls for the arbitration to "be in accordance with the American Health Lawyers Association Alternative Dispute Resolution Service Rules of Procedure for Arbitration."

J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 319 (4th Cir. 1988).

Dr. Horneffer contends that the instant dispute cannot be arbitrated because qui tam claims of fraud and illegal conduct are not within the scope of the arbitration clause.  While this may very well be correct, the instant case is not one presenting qui tam claims.  Dr. Horneffer's claims are for retaliatory discrimination and tortious interference with his employment.  His claims are within the broad scope of the arbitration clause.

The Agreement provides for arbitration of "any dispute related to the employment relationship between the parties." The Agreement 14, ¶ 21.  "Disputes subject to arbitration include, but are not limited to, all employment-related claims arising under state or federal statutes, common-law torts, and contract claims."  Id.

Moreover, the Fourth Circuit has held that retaliation claims brought under § 3730(h) may be subject to arbitration. United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 381 (4th Cir. 2008).  "[B]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than judicial, forum."  Murray, 289 F.3d at 301 (citations omitted).


B.   The Nonsignatory Issue

Only Dr. Horneffer and Enterprise signed the Agreement that contains the arbitration clause at issue. However, the United States Court of Appeals for the Fourth Circuit has recognized that there are circumstances in which nonsignatories of arbitration agreements may enforce that agreement against a signatory. Int'l Paper Co. v. Schwabedissen Maschinen & Anleagen GMBH, 206 F.3d 411, 416-17 (4th Cir. 2000); see also Am. Bankers Ins. Group, Inc. v. Long, 453 F.3d 623, 627 (4th Cir. 2006) ("It is well-established . . . that a nonsignatory to an arbitration clause may, in certain situations, compel a signatory to the clause to arbitrate the signatory's claims against the nonsignatory despite the fact that the signatory and nonsignatory lack an agreement to arbitrate.").

There are five theories that may provide a basis for enforcing an arbitration clause: "1) incorporation by references; 2) assumption; 3) agency; 4) veil piercing/alter ego; and 5) estoppel." Id. at 417 (citing Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995)); see also Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 129 S. Ct. 1896, 1902 (2009)(noting that traditional principles of state law, such as assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories,

waiver, and estoppel, may support arbitration by a nonparty to the written arbitration agreement).

Defendants rely upon the estoppel theory. The Fourth Circuit has stated, in regard to when a nonsignatory may be equitably estopped to avoid an arbitration clause:

> First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to, or presumes the existence of, the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. Second, application of equitable estoppel is warranted when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise, the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

Brantley v. Republic Mortg. Ins. Co., 424 F.3d 392, 395-96 (4th Cir. 2005) (citations, quotation marks, ellipses, and alterations omitted)).

In essence, it would be inequitable to allow the signatory to seek to hold a nonsignatory liable based on duties imposed by an agreement, but repudiate the agreement's arbitration clause. Am. Bankers Ins. Group, Inc. v. Long, 453 F.3d 623, 627 (4th Cir. 2006)(citing Wachovia Bank, Nat. Ass'n v. Schmidt, 445 F.3d

762, 769 (4th Cir. 2006)).  Additionally, a party may not use artful pleading to avoid arbitration, such as by bringing an action against a nonsignatory charged with acting in concert with a non-defendant signatory.  Id. at 628 (citing R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n, Inc., 384 F.3d 157, 164 (4th Cir. 2004)); see also Davidson v. Becker, 256 F. Supp. 2d 377 (D. Md. 2003)(allowing a nonsignatory agent to compel arbitration, the court stated that "[s]uch a finding also has the result of preventing an unwanted result: the circumvention of valid arbitration agreements by plaintiffs").

To determine whether a signatory's claims against a nonsignatory arise out of and relate directly to the written agreement, the Court must examine the underlying complaint.  Am. Bankers, 453 F.3d at 627.  Dr. Horneffer contends that the retaliation at issue here is not a breach of the Agreement but rather a breach of § 3730(h).  However, it is not necessary for the signatory to assert a cause of action against the nonsignatory for breach of the contract containing the arbitration clause. Id. at 627-28.  Rather, estoppel is appropriate if the substance of the underlying complaint is based on the nonsignatory's alleged breach of obligations and duties imposed on it by virtue of the agreement, regardless of the claim's label.  Id. at 628.

12

Dr. Horneffer seeks to avoid arbitration by not suing Enterprise (the signatory) while basing claims on the allegation that St. Joseph and CHI (the nonsignatories) acted "in concert" and in bad faith with Enterprise to take acts detrimental to Dr. Horneffer's employment with Enterprise under the Agreement.  <u>See</u> Compl. 15 ¶ 54.  Further, Dr. Horneffer asserts claims against St. Joseph and CHI that arise out of and relate directly to his employment with Enterprise under the Agreement.  For example, he alleges that:

- CHI and St. Joseph entered into a settlement agreement with Dr. Horneffer wherein they agreed to employ him by an affiliate (Enterprise) under the terms and conditions of an employment agreement (the Agreement). Compl. 13 ¶ 47-48.

- St. Joseph threatened to terminate Dr. Horneffer's employment with Enterprise and threatened to terminate the employment agreement. Compl. 17-19 ¶ 54(f),(h).

- St. Joseph "threated to substantially reduce and even eliminate" Dr. Horneffer's salary. Compl. 22 ¶ 56.

- St. Joseph "threatened to enforce a non-compete clause" in the Agreement with Enterprise.  Compl. 22 ¶ 56.

- Dr. Horneffer requests an award of back-pay [presumably from Enterprise] as part of his award. Compl. 23.

Dr. Horneffer alleges that the Agreement was negotiated between himself, CHI, St. Joseph, and Enterprise, as part of "the employment undertaking." Compl. 15 ¶ 53.  Although neither St. Joseph nor CHI signed the Agreement, they had rights under

13

it, and Dr. Horneffer seeks to impose liability on them for their violation of a duty not to discriminate, threaten, or harass him as an employee under the Agreement.  Dr. Horneffer cannot rely on the employment relationship under the Agreement to make his claims, yet repudiate the arbitration provision therein.

Dr. Horneffer's argument that he does not need the employment agreement with Enterprise to establish his claims against St. Joseph and CHI is unavailing.  He bases his claims upon the existence of the employment relationship established by the Agreement.  Dr. Horneffer notes that he formerly had an employment relationship with CHI and St. Joseph that was not governed by the Agreement and, presumably, could have such a relationship in the future.  Nevertheless, the instant case pertains to the time during which his employment was with Enterprise and was based upon the Agreement.

Dr. Horneffer asserts that the principles of equitable estoppel do not apply because his claim is based upon an independent breach of statutory obligations, like the plaintiffs in Brantley, who sought relief under a Federal statute.[9] Thus, he argues, his claims are "wholly separate from any action or

---

[9] Dr. Horneffer seeks whistleblower protection under 31 U.S.C. § 3730(h).  The Brantley plaintiffs sought relief under the Fair Credit Reporting Act.  Brantley, 424 F.3d at 396.

remedy for breach of the underlying [] contract that is governed by the arbitration agreement." 424 F.3d at 396.  However, in Brantley, the underlying contract containing the arbitration agreement was a mortgage contract, but in the lawsuit, the home buyers were suing their mortgage insurer for increasing their insurance premiums on the mortgage debt based on information wrongfully obtained from their consumer credit reports.  Id.  The court found that the claims for unfair reporting were not intertwined with the contract simply because the mortgage itself required the plaintiffs to obtain insurance.  Id.  The court also found that there were no allegations of collusion or misconduct by the signatory to the arbitration agreement, and the claims were based entirely on actions taken by the nonsignatory. Id.

Here, Dr. Horneffer's claim under 31 U.S.C. § 3730(h) was brought in the capacity of an employee and is based upon the existence of an employee relationship.[10]  Dr. Horneffer's employment relationship is established by the Agreement. Dr.

---

[10] "Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h)(1).

Horneffer alleges that he was retaliated against by his employer in the terms and conditions of his employment and that Defendants tortiously interfered with his employment. These allegations directly relate to his employment and implicate Enterprise (as employer), and St. Joseph and CHI acting in concert to interfere with his rights as an employee.

### C.   The Fair And Equitable Issue

The FAA provides that an arbitration agreement may be invalidated under "such grounds as exist at law or in equity." 9 U.S.C. § 2.  These grounds must relate specifically to the arbitration clause as opposed to the contract as a whole. Hooters of America, Inc. v. Phillips, 173 F.3d 933, 938 (4th Cir. 1999).  By agreeing to arbitration, litigants do not "forego their right to have their dispute fairly resolved by an impartial third party."  Murray, 289 F.3d at 303.  The Court must ensure that the litigant can effectively resolve his or her claim in the arbitral forum.  Id. at 302.

Dr. Horneffer asserts that principles of equity mandate that this case not be referred to arbitration.  Dr. Horneffer argues that the process for selecting an arbitrator would be biased if, pursuant to the Agreement, the arbitration was conducted in accordance with the American Health Lawyers

16

Association Alternative Dispute Resolution Service Rules of Procedure for Arbitration. Defendants deny this contention but have mooted the issue by agreeing that they will not seek to enforce this obligation.  Hr'g Tr. 12:18-13:10 [Document 13].

Dr. Horneffer contends that arbitration would not be fair or equitable because St. Joseph and CHI have unclean hands, and an arbitrator will be unable to ensure full and fair discovery due to Defendants' typical discovery tactics.  There is nothing to support an "unclean hands" contention as to the applicability of the arbitration clause. There is no basis to find that the substantive allegations of illegal conduct are not appropriate for resolution by arbitration pursuant to the Agreement.

### D.   Cost, Fees

Defendants request, pursuant to 28 U.S.C. § 1927, that the Court award it the excess costs, expenses, and attorney's fees incurred as a result of the requirement to redraft this motion because the original complaint inaccurately stated facts related to Dr. Horneffer's employment.

Section 1927 provides: "Any attorney or other person admitted to conduct cases ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and

17

attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.  The purpose of § 1927 is to limit the abuse of court processes.  DeBauche v. Trani, 191 F.3d 499 (4th Cir. 1999) (citing Roadway Express, Inc. v. Piper, 447 U.S. 752, 762 (1980)).  As such, a court considering the propriety of a § 1927 award must focus "on the conduct of the litigation and not on its merits."  Id.  The Fourth Circuit has noted that "a finding of counsel's bad faith [is] a precondition to the imposition of fees" under § 1927.  Brubaker v. City of Richmond, 943 F.2d 1363, 1382 n.25 (4th Cir. 1991).

It is true that the original Complaint was drafted inadequately and served to cause the defense unnecessary expense.  This fact may be pertinent in some context - for example, should there be consideration of an award of costs on grounds other than § 1927.  However, the Court does not find that Plaintiff's counsel acted vexatiously so as to warrant the imposition of § 1927 sanctions.

IV. CONCLUSION

For the foregoing reasons:

> 1. The Renewed Motion of Defendants Saint Joseph Medical Center, Inc. and Catholic Health Initiatives to Compel Arbitration [Document 15] is GRANTED IN PART.

      2.    Plaintiff shall pursue his claims presented herein, if at all, in arbitration proceedings pursuant to the Physician Employment Agreement referred to herein.

      3.    By separate Order, the Court shall stay this case pending conclusion of the said arbitration proceedings.

SO ORDERED on Wednesday, March 21, 2012.

                                                  /s/
                                  Marvin J. Garbis
                        United States District Judge